**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| ETHAN MCROREY et al., | |
|     Plaintiffs, | Case No. 7:23-cv-00047-O |
|   v. | |
| MERRICK B. GARLAND, in his Official Capacity as Attorney General of the United States, et al., | |
|     Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION, AND/OR PERMANENT INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.    Statutory & Regulatory Background .......................................................................... 2

    A.    The Gun Control Act of 1968 .......................................................................... 2

    B.    The Brady Handgun Violence Prevention Act .......................................... 3

    C.    The Bipartisan Safer Communities Act ....................................................... 5

    D.    Results of the Background Check Provisions of the Brady Act & the BSCA .......... 7

II.    Factual & Procedural Background ............................................................................. 8

LEGAL STANDARDS ........................................................................................................ 9

ARGUMENT ...................................................................................................................... 9

I.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs' Claims Are Moot or Will Soon Become Moot. .............................................................................................. 10

II.    Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits. ...................... 11

    A.    The Commercial Sale Regulations Challenged Here Do Not Implicate Conduct Protected Under the Second Amendment. ....................................... 12

    B.    In Light of Founding Era History, as Interpreted by the Fifth Circuit, the Second Amendment Does Not Secure a Right to Bear Arms Before the Age of Twenty-One. ............................................................................................... 16

III.    Plaintiffs Have Not Shown That They Will Incur Irreparable Harm Absent a Preliminary Injunction. .......................................................................................... 23

IV.    The Balance of Equities and Public Interest Favor Defendants. ............................... 26

V.    Any Relief Ordered Should Be Appropriately Limited. ............................................ 28

CONCLUSION ................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*16 Front St. LLC v. Mississippi Silicon, LLC,*
  No. 1:14-CV-00183-DMB, 2015 WL 4665223 (N.D. Miss. July 30, 2015) ............................ 18-19

*Alto-Shaam, Inc. v. Manitowoc Co.,*
  No. 7:09-CV-18-O, 2010 WL 11530847 (N.D. Tex. Feb. 3, 2010) ................................................ 30

*Aransas Project v. Shaw,*
  775 F.3d 641 (5th Cir. 2014) ...................................................................................................... 23

*ASARCO Inc. v. Kadish,*
  490 U.S. 605 (1989) .................................................................................................................... 12

*CAE Integrated, L.L.C. v. Moov Techs., Inc.,*
  44 F.4th 257 (5th Cir. 2022) ......................................................................................................... 9

*Canal Authority of Fla. v. Callaway,*
  489 F.2d 567 (5th Cir. 1974) ........................................................................................................ 9

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ...................................................................................................................... 10

*DHS v. New York*
  140 S. Ct. 599 (2020) .................................................................................................................. 29

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ................................................................................... 11, 12, 13, 19, 20

*Dresser-Rand Co. v. Virtual Automation Inc.,*
  361 F.3d 831 (5th Cir. 2004) ................................................................................................ 9, 29-30

*Dung Quoc Pham v. Blaylock,*
  712 F. App'x 360 (5th Cir. 2017) ........................................................................................ 9, 29-30

*Elrod v. Burns,*
  427 U.S. 347 (1976) .................................................................................................................... 25

*Ezell v. City of Chicago,*
  846 F.3d 888 (7th Cir. 2017) ...................................................................................................... 13

*Firearms Policy Coalition Inc. v. McCraw, No. 4:21-cv-1245,*
  2022 WL 3656996 (N.D. Tex. Aug. 25, 2022) ............................................................................ 22

*Fitz v. Rosenblum, No. 3:22-CV-01859-IM,*
  2022 WL 17480937 (D. Or. Dec. 6, 2022) ................................................................................. 26

*Flanary v. Baltimore Cnty., No. CV CCB-16-3422,*
  2017 WL 1953870 (D. Md. May 11, 2017) ................................................................................. 26

*Fraser v. BATFE,*
2023 U.S. Dist. LEXIS 82432 (E.D. Va. May 10, 2023) ............................................. 13, 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...................................................................................................... 10

*Gill v. Whitford,*
138 S. Ct. 1916 (2018) .................................................................................................. 28

*Goldin v. Bartholow,*
166 F.3d 710 (5th Cir. 1999) ........................................................................................ 10

*Greer's Ranch Cafe v. Guzman,*
540 F. Supp. 3d 638 (N.D. Tex. 2021) ........................................................................... 9

*Hassani v. Napolitano,*
2009 WL 2044596 (N.D. Tex. 2009) ............................................................................... 9

*Huddleston v. United States,*
415 U.S. 814 (1974) ........................................................................................................ 2

*ITT Educ. Servs., Inc. v. Arce,*
533 F.3d 342 (5th Cir. 2008) ........................................................................................ 30

*John Doe # 1 v. Veneman,*
380 F.3d 807 (5th Cir. 2004) ........................................................................................ 28

*Jones v. Soles,*
No. 3:00-CV-1237-M, 2001 WL 34316329 (N.D. Tex. June 28, 2001) ......................... 25

*Lacassagne v. Chapuis,*
144 U.S. 119 (1892) ...................................................................................................... 24

*Libertarian Party v. Dardenne,*
595 F.3d 215 (5th Cir. 2010) ........................................................................................ 11

*Bezet v. United States,*
714 F. App'x 336 (5th Cir. 2017) .................................................................................. 13

*Los Angeles Cnty. v. Davis,*
440 U.S. 625 (1979) ...................................................................................................... 10

*Louisiana v. Becerra,*
20 F.4th 260 (5th Cir. 2021) (per curiam) .................................................................... 19

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ...................................................................................................... 11

*Madsen v. Women's Health Ctr., Inc.,*
512 U.S. 753 (1994) ...................................................................................................... 28

*Mance v. Holder,*

74 F. Supp. 3d 795, 805 (N.D. Tex. 2015), *rev'd and vacated on other grounds sub nom. Mance v. Sessions*, 880 F.3d 183 (5th Cir. 2018), *withdrawn and superseded on denial of reh'g en banc*, 896 F.3d 699 (5th Cir. 2018), *and rev'd and vacated sub nom. Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018) ................. 17

*Martin-Marietta Corp. v. Bendix Corp.*,
  690 F.2d 558 (6th Cir. 1982) ........................................................................................... 28

*Maryland v. King*,
  567 U.S. 1301 (2012) ........................................................................................................ 28

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ............................................................................................... 12-13, 20-21

*Mitchell v. Tex. Dep't of Crim. Just.*,
  No. 3:19-CV-0167, 2021 WL 1115299 (S.D. Tex. Mar. 8, 2021) ................................... 25

*Multilift Wellbore Tech. Ltd. v. ESP Completion Techs. LLC*,
  No. 2:16-CV-01187-RSP, 2017 WL 10222420 (E.D. Tex. July 25, 2017) ....................... 26

*MultiTracks, LLC v. Palmer*,
  No. A-21-CV-00645-LY, 2021 WL 7184185 (W.D. Tex. Nov. 18, 2021), *report and recommendation adopted*, No. A:21-CV-00645-LY, 2021 WL 7184184 (W.D. Tex. Dec. 6, 2021) ..................... 24-25

*Nat'l Treasury Emps. Union v. Von Raab*,
  489 U.S. 656 (1989) .......................................................................................................... 26

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ........................................................................................................ 28

*New York State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ............................................................................................ *passim*

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................................................... 27

*NRA v. ATF*,
  700 F.3d 185 (5th Cir. 2012) .................................................................................. *passim*

*NRA v. Bondi*,
  61 F.4th 1317 (11th Cir. 2023) ........................................................................................ 22

*NRA v. McCraw*,
  719 F.3d 338 (5th Cir. 2013) ........................................................................................... 17

*ODonnell v. Harris Cnty.*,
  892 F.3d 147 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) ........................................................................................................................ 28

*Optimus Steel, LLC v. U.S. Army Corps of Engineers*,
  492 F. Supp. 3d 701 (E.D. Tex. 2020) ............................................................................ 24

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ................................................................................. 25

*O'Brien v. Calvo,*
    No. 12-cv-2700-ARR-MDG, 2013 WL 1247521 (E.D.N.Y. Mar. 27, 2013) ................................ 11

*O'Connor v. Smith,*
    427 F. App'x 359 (5th Cir. 2011) ........................................................................... 30

*O'Dell v. N. River Ins. Co.,*
    614 F. Supp. 1556 (W.D. La. 1985) ......................................................................... 18

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.,*
    579 F.3d 502 (5th Cir. 2009) ............................................................................... 25

*Parks v. Dunlop,*
    517 F.2d 785 (5th Cir. 1975) ............................................................................... 26

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.,*
    45 F.4th 816 (5th Cir. 2022) ............................................................................... 24

*Reese v. ATF,*
    No. 6:20-CV-01438, --- F. Supp. ---- 3d, 2022 WL 17859138 (W.D. La. Dec. 21, 2022) ............. 17

*Reese v. ATF,*
    No. 23-30033 (5th Cir. Jan. 13, 2023) ................................................................. 17, 29

*Robinson v. Ferguson,*
    849 F. App'x 77 (5th Cir. 2021) ........................................................................... 11

*Sierra Club v. United States Army Corps of Engineers,*
    482 F. Supp. 3d 543 (W.D. Tex. 2020) ...................................................................... 24

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ........................................................................................ 12

*Speed v. America's Wholesale Lender,*
    2014 WL 4755485 (N.D. Tex. 2014) ......................................................................... 9

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) .............................................................................. 10

*Teixeira v. County of Alameda,*
    873 F.3d 670 (9th Cir. 2017) (en banc) .................................................................... 13

*Texas v. Ysleta del Sur Pueblo,*
    No. EP-17-CV-179-PRM, 2019 WL 639971 (W.D. Tex. Feb. 14, 2019) ........................................ 18

*TransUnion LLC v. Ramirez,*
    210 L. Ed. 2d 568, 141 S. Ct. 2190 (2021) ................................................................ 24

*Trump v. Hawaii,*

201 L. Ed. 2d 775, 138 S. Ct. 2392 (2018) .......................................................................... 29

*Turaani v. Wray,*
   988 F.3d 313 (6th Cir. 2021) ................................................................................................ 11

*Turner v. Rogers,*
   564 U.S. 431 (2011) .............................................................................................................. 11

*United States v. Emerson,*
   270 F.3d 203 (5th Cir. 2001) ............................................................................................... 19

*United States v. Hicks,*
   2023 U.S. Dist. LEXIS 35485 (W.D. Tex. Jan. 9, 2023), *appeal docketed*, No. 23-50030 (5th Cir.
   Jan. 12, 2023) ................................................................................................................... 13-14

*United States v. McGinnis,*
   956 F.3d 747 (5th Cir. 2020) ............................................................................................... 19

*United States v. Rahimi,*
   61 F.4th 443 (5th Cir. 2023) (en banc) ............................................................................... 19

*United States v. Sanchez-Gomez,*
   138 S. Ct. 1532 (2018) ............................................................................................... 10-11, 26

*Winter v. NRDC,*
   555 U.S. 7 (2008) .................................................................................................................... 9

*Worth v. Harrington,*
   No. 21-cv-1348, 2023 WL 2745673 (D. Minn. Mar. 31, 2023) ..................................... 22-23

*Wortham v. Dun & Bradstreet, Inc.,*
   399 F. Supp. 633 (S.D. Tex. 1975) ...................................................................................... 26

*Zurovetz v. Argenbright,*
   No. 6:19CV481, 2021 WL 970464 (E.D. Tex. Feb. 8, 2021), *report and recommendation adopted*, No.
   6:19CV481, 2021 WL 963744 (E.D. Tex. Mar. 15, 2021) .................................................. 25

**U.S. Constitution**

U.S. Const. art. III, § 2 ............................................................................................................ 11

U.S. Const. amend. II ....................................................................................................... *passim*

U.S. Const. amend. IV ............................................................................................................... 8

**Federal Statutes**

18 U.S.C. § 921 ......................................................................................................................... 6

18 U.S.C. § 922 ................................................................................................................. *passim*

18 U.S.C. § 925A ....................................................................................................................... 5

18 U.S.C. §§ 921-931 ............................................................................................................. 2, 6

34 U.S.C. § 40901 .................................................................................................... 7, 8, 13

42 U.S.C. § 1396a note ...................................................................................................... 6

42 U.S.C. § 1396d note ...................................................................................................... 6

42 U.S.C. § 254c-19 .......................................................................................................... 6

**State Statutes**

Ala. Code § 13A-11-75(c) ................................................................................................ 15

Alaska Stat. Ann. § 18.65.700(b) .................................................................................... 15

Ariz. Rev. Stat. Ann § 13-3112(E)(2), (H) ................................................................ 15, 23

Colo. Rev. Stat. § 18-12-203 ........................................................................................... 23

Colo. Rev. Stat. Ann. § 18-12-206(1) .............................................................................. 15

430 Ill. Comp. Stat. Ann. §§ 66/10(e), 66/25(1) ....................................................... 15, 23

Fla. Stat. Ann § 790.06 ............................................................................................... 15, 23

Ga. Code. Ann. § 16-11-129 ........................................................................................... 23

Idaho Code § 18-3302K ............................................................................................. 15, 23

Ky. Rev. Stat. Ann. § 237.110(9) ..................................................................................... 15

La. Stat. Ann. § 40:1379.3(H)(2) ..................................................................................... 16

Me. Rev. Stat. tit. 25, § 2003(12) ..................................................................................... 15

Md. Code Ann. §§ 5-117, 5-117.1 .................................................................................. 14

Mich. Comp. Laws Ann. § 28.425b(13) ........................................................................... 15

Minn. Stat. Ann. § 624.714(6) ......................................................................................... 15

Miss. Code. Ann. § 45-9-101(6)(c) .................................................................................. 15

Mo. Ann. Stat. § 571.101(5)(2) ....................................................................................... 15

Mont. Code Ann. § 45-8-321(1) ....................................................................................... 15

Neb. Rev. Stat. Ann. § 69-2430(3)(b) .............................................................................. 15

Nev. Rev. Stat. Ann. §§ 202.3657, 202.366(3) ............................................................... 15

N.H. Rev. Stat. Ann. § 159:6(I)(b) ................................................................................... 15

N.M. Stat. Ann. §§ 29-19-4; 29-19-6(A) ......................................................................... 15

N.C. Gen. Stat. Ann. §§ 14-415.11, 14-415.15 ............................................................... 15

Ohio Rev. Code Ann. § 2923.125(D) ............................................................................... 15

Okla. Stat. Ann. tit. 21, § 1290.12(13) ............................................................................ 15

Or. Rev. Stat. Ann. §§ 166.291, 166.292(1) .................................................................... 15

18 Pa. Stat. and Cons. Stat. Ann. § 6109(e)(1) ............................................................... 15

S.C. Code Ann. § 23-31-215(C) ...................................................................................... 15

S.D. Codified Laws §§ 23-7-7.1, 23-7-7.7 ...................................................................... 15

Tex. Gov't Code Ann. § 411.177(c) ................................................................................15

Utah Code Ann. § 53-5-704.5(1)(a) ................................................................................15

Wash. Rev. Code Ann. § 9.41.070(1) ..............................................................................15

W. Va. Code Ann. § 61-7-4(g) ........................................................................................15

Wis. Stat. Ann. § 175.60(9)(b) ........................................................................................15

Wyo. Stat. Ann. § 6-8-104(m) ........................................................................................15

**Rules**

Fed. R. Civ. P. 65 ............................................................................................................ 29

**Other**

27 C.F.R. part 478 ............................................................................................................ 3

27 C.F.R. § 478.124 .......................................................................................................... 4

28 C.F.R. § 25.1 ............................................................................................................... 4

28 C.F.R. § 25.3 ............................................................................................................... 3

28 C.F.R. § 25.6 ....................................................................................................... 1, 4, 5

28 C.F.R. § 25.10 ............................................................................................................. 5

28 C.F.R. §§ 25.1-25.11 ............................................................................................ 3, 4, 5

H.R. Rep. No. 103-344 (1993), as reprinted in 1993 U.S.C.C.A.N. 1984 ........................... 3

Albert W. Alschuler & Andrew G. Deiss, *A Brief History of the Criminal Jury in the United States*, 61 U. CHI. L. REV. 867 n.52 (1994)(finding no evidence that historical legislatures authorized individuals under the age of 21 to serve on juries) ................................................ 20

Emma Bowman et al., *What We Know So Far About the Buffalo Mass Shooting*, NPR (May 16, 2022), https://www.npr.org/2022/05/15/1099028397/buffalo-shooting-what-we-know ..................... 5

Emily Cochrane, *Congress Passes Bipartisan Gun Legislation, Clearing It for Biden*, N.Y. Times (June 24, 2022), https://www.nytimes.com/2022/06/24/us/politics/gun-control-bill-congress.html .................. 5

*Federal Denials*, FBI, https://www.fbi.gov/file-repository/federal_denials.pdf (last visited May 22, 2023) .................... 7

Fact Sheet*, The White House, President Biden Announces 13 New Actions to Reduce Gun Violence by Maximizing the Benefits of the Bipartisan Safer Communities Act (May 14, 2023)*, (May 14, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/05/14/fact-sheet-president-biden-announces-13-new-actions-to-reduce-gun-violence-by-maximizing-the-benefits-of-the-bipartisan-safer-communities-act/ .................. 7-8, 27

Joint Statement, Senator John Cornyn (R-TX) et al., Bipartisan Senators Announce Agreement (June 12, 2023), https://www.cornyn.senate.gov/news/cornyn-bipartisan-senators-announce-agreement/ ..........6

Joint Statement, Senators John Cornyn (R-TX), Chris Murphy (D-CT), Kyrsten Sinema (D-AZ) & Thom Tillis (R-NC), Bipartisan Group of Senators Announce Bipartisan Safer Communities Act (June 22, 2023),
    https://www.cornyn.senate.gov/news/cornyn-bipartisan-group-of-senators-announce-bipartisan-safer-communities-act/ ........................................................................................................... 6

Pamela S. Karlan, *Ballots and Bullets: The Exceptional History of the Right to Vote*,
    71 U. Cin. L. Rev. 1345, 1358-59 (2003) ............................................................................. 19

Rep. Tony Gonzales (R-TX), *We Passed the Bipartisan Safer Communities Act for the 21 Uvalde Victims – and the People Mourning Their Loss*, CNN (June 25, 2022),
    https://www.cnn.com/2022/06/25/opinions/bipartisan-gun-safety-bill-uvalde-gonzales/index.html ............................................................................................................... 5

Saul Cornell, *"Infants" and Arms Bearing in the Era of the Second Amendment: Making Sense of the Historical Record*,
    40 Yale L. & Pol. Rev. Inter Alia 1, 8 (2021) ....................................................... 19-20

U.S. Dep't of Justice, NICS Instant Criminal Background Check System Operational Report 2020-2021, https://www.fbi.gov/file-repository/nics-2020-2021-operations-report.pdf (Apr. 2022) ............................................................................................................................... 5

Vivian Hamilton, *Adulthood in Law and Culture*,
    91 Tul. L. Rev. 55 (2016) ...................................................................................................... 19

*What to Know About the School Shooting in Uvalde, Texas*, N.Y. Times (Aug. 25, 2022),
    https://www.nytimes.com/article/uvalde-texas-school-shooting.html ...................................... 5-6

*Zephaniah Swift,* 1 A System of the Laws of the State of Connecticut 213-16,
    (Windham & John Bryne eds., 1795) .................................................................................... 20

## INTRODUCTION

Plaintiffs Ethan McRorey, Kaylee Flores, Gun Owners of America, Inc. ("GOA"), and Gun Owners Foundation ("GOF"), seek the extraordinary equitable relief of a temporary restraining order ("TRO") or preliminary injunction to prevent the Federal Bureau of Investigation ("FBI") from conducting the background investigations that Congress has mandated prior to purchase of a firearm from a federal firearms licensee ("FFL").   These background checks ensure that eighteen- to twenty-year-olds who purchase firearms from FFLs are not prohibited from possessing firearms based, for example, on a past felony conviction or adjudication as a "mental defective."  Consistent with statutory and regulatory requirements, this background check must be completed within ten business days of the attempted purchase.  Mr. McRorey's background check was completed on May 18, 2023—three business days after he attempted to purchase a firearm from a federally licensed dealer—clearing the way for the dealer to complete the sale.  Unless Ms. Flores's background check is denied, she will be permitted to purchase a firearm no later than 12:01 a.m. on May 27, 2023, when ten business days following her attempted firearm purchase expire.   *See* 18 U.S.C. § 922(t)(1)(C); 28 C.F.R. § 25.6(c)(1)(iv)(B).  Accordingly, Mr. McRorey no longer faces any actual or imminent harm as a result of the provisions that Plaintiffs challenge—much less irreparable harm that is likely to occur before this action is adjudicated on the merits—and, by operation of law, Ms. Flores will no longer face any such harm by May 27, 2023, if not sooner.  For that reason alone, the Court should deny Plaintiffs' motion for a TRO or preliminary injunction.

Moreover, with respect to Plaintiffs' likelihood of success on the merits, their Second Amendment claim rests on two unsupportable premises: *first*, that a delay of up to ten business days to obtain a firearm while a background check remains pending violates the Second Amendment on its face, and, *second*, that the Second Amendment secures a right to keep and bear arms to individuals under the age of twenty-one.  With respect to the first premise, Plaintiffs cite no authority to support

their theory—which, moreover, cannot be reconciled with the Supreme Court's repeated assurances in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), that the shall-issue licensing regimes of forty-three states—many of which afford States longer than ten business days to complete required background checks—are facially consistent with the Second Amendment on their face. With respect to Plaintiffs' second premise, twenty-one was the universally recognized age of majority in the Founding Era, and, accordingly, the Second Amendment does not secure the right to keep and bear arms to individuals under that age, who were minors when the Amendment was ratified.  Once again, the shall-issue licensing regimes of which the Court expressly approved in *Bruen*—many of which prohibit those under twenty-one from bearing arms for self-defense in public—confirm this conclusion.

For both of these reasons, and because the balance of equities and public interest strongly counsel against enjoining a broadly supported federal law that has been demonstrated to keep firearms out of the hands of young criminals and other prohibited persons, the Court should deny Plaintiffs' request for a TRO or preliminary injunction.

## BACKGROUND

### I.      Statutory & Regulatory Background

### A.      The Gun Control Act of 1968

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931, establishes a comprehensive federal regulatory scheme governing the manufacture and distribution of firearms and ammunition.  Congress's "principal purpose" in enacting this legislation was to "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501 at 22 (1968)).  The Gun Control Act thus prohibits, among other things, certain categories of persons from receiving or possessing firearms or ammunition in or affecting interstate

or foreign commerce.  18 U.S.C. § 922(g).  Among the prohibited categories are certain felons, persons who have been adjudicated as "mental defectives," non-citizens who are present in the country unlawfully, and persons who have been convicted of certain domestic violence crimes.  *Id.* § 922(g)(1), (4), (5), (9).  These provisions are paired with a prohibition on the transfer of firearms to certain classes of prohibited persons.  *Id.* § 922(d).  The Gun Control Act also prohibits FFLs from transferring firearms or ammunition to individuals under the age of eighteen.  *Id.* § 922(b)(1).  It further prohibits FFLs from transferring firearms and ammunition other than shotguns, rifles, and ammunition for shotguns and rifles to individuals under the age of twenty-one.  *Id.*

### B.    The Brady Handgun Violence Prevention Act

In 1993, Congress enacted the Brady Handgun Violence Prevention Act, amending the Gun Control Act, Pub. L. No. 103-159, 107 Stat. 1536 ("Brady Act").  To prevent the transfer of firearms to those prohibited from possessing them, the Brady Act requires individuals who attempt to purchase a firearm from an FFL to undergo a criminal background check, 18 U.S.C. § 922(t); *see* H.R. Rep. No. 103-344 (1993), as reprinted in 1993 U.S.C.C.A.N. 1984, 1984-88. To facilitate compliance with this requirement, Congress directed the Attorney General to establish and operate a nationwide criminal background check system for FFLs to consult to determine whether a prospective transferee is prohibited from receiving or possessing a firearm under federal or state law.  18 U.S.C. § 922(t)(1), (t)(2).  Pursuant to that authority, the Attorney General established the National Instant Criminal Background Check System ("NICS"), 28 C.F.R. §§ 25.1-25.11, and assigned management of NICS to the FBI, *id.* § 25.3; 27 C.F.R. part 478.

Under the Attorney General's regulations governing NICS, the transfer of a firearm from an FFL generally proceeds as follows:  First, the prospective transferee completes ATF Form 4473, which requires, among other things, attestation that the prospective transferee is not prohibited under federal, State, tribal, or local law from possessing or receiving a firearm.  *See* 18 U.S.C.

3

§ 922(s)(1)(A)(i)(I), (s)(3)(B); 27 C.F.R. § 478.124(a). The FFL then relays to NICS, either electronically or by telephone, the prospective transferee's name and certain other identifying information (*e.g.*, date of birth and state of residence). 27 C.F.R. § 478.124(c)(1), (2); 28 C.F.R. §§ 25.6(b), 25.7(a). An examiner with the NICS Operation Center uses this information to perform a background check to attempt to determine, based on the information available to NICS, whether the prospective transferee is prohibited from receiving a firearm under federal, State, tribal, or local law. *See* 18 U.S.C. § 922(t)(2); 28 C.F.R. § 25.1. This component of the background check process entails a search of three national databases: (i) the National Crime Identification Center ("NCIC"), which contains records on wanted persons, protection orders, and other persons identified as relevant to NICS searches; (ii) the Interstate Identification Index ("III"), which contains criminal history records; and (iii) the NICS Index, which contains information on prohibited persons, as defined under either federal or state law. *See* 28 C.F.R. § 25.6(c)(1)(iii), (f).

After performing this background check, if the prospective transferee is at least twenty-one years old (and subject to other narrow exceptions not relevant here), NICS sends one of three responses to the FFL:

(i)      Proceed: If the database search produces no prohibitive or potentially prohibitive information regarding the prospective transferee, NICS sends a "proceed" response, thereby authorizing the FFL to transfer the firearm, subject to any waiting periods mandated by state law. 28 C.F.R. § 25.6(c)(1)(iv)(A).

(ii)     Denied:   If the database search reveals information demonstrating that the prospective transferee is prohibited from receiving a firearm, NICS sends a "denied" response, thereby prohibiting the FFL from transferring the firearm after the "denied" response is provided.

*Id.* § 25.6(c)(1)(iv)(C).[1]

(iii)   Delayed:  If the database search reveals a "potentially prohibitive" record requiring more research to determine whether the prospective transferee is, in fact, prohibited from possessing a firearm, NICS sends a "delayed" response.  28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B).  An FFL that receives a "delayed" response may complete the transfer once either (i) NICS sends a follow-up "proceed" response, or (ii) three business days have elapsed since the FFL received the "delayed" response, and NICS has not sent a follow-up "denied" response—whichever occurs first—subject to any waiting periods mandated under state law. *Id.*[2]

## C.   The Bipartisan Safer Communities Act

On June 25, 2022, Congress enacted the Bipartisan Safer Communities Act ("BSCA"), Pub. L. No. 117-159, 136 Stat. 1313, following tragic mass shootings at Robb Elementary School in Uvalde, Texas, and at a grocery store in Buffalo, New York, both committed in late May 2022 by eighteen-year-olds.  *See* Rep. Tony Gonzales (R-TX), *We Passed the Bipartisan Safer Communities Act for the 21 Uvalde Victims – and the People Mourning Their Loss*, CNN (June 25, 2022), https://www.cnn.com/2022/06/25/opinions/bipartisan-gun-safety-bill-uvalde-gonzales/index.html; Emily Cochrane, *Congress Passes Bipartisan Gun Legislation, Clearing It for Biden*, N.Y. TIMES (June 24, 2022),   https://www.nytimes.com/2022/06/24/us/politics/gun-control-bill-congress.html; *What to Know About the School Shooting in Uvalde, Texas*, N.Y. TIMES (Aug. 25, 2022),

---

[1] A prospective transferee whose firearm transaction is denied by NICS may pursue several administrative remedies.  *See id.* § 25.10.  The Gun Control Act also provides a narrow private cause of action for wrongful denial of a firearm transaction.  *See* 18 U.S.C. § 925A.

[2] Between 2003 and 2021, NICS processed an average of 90.14% of Brady Act background checks immediately, while the remaining 9.86%, on average, were initially placed into a "delayed" status.  *See* U.S. DEP'T OF JUSTICE, NICS INSTANT CRIMINAL BACKGROUND CHECK SYSTEM OPERATIONAL REPORT *2020-2021* at 12, https://www.fbi.gov/file-repository/nics-2020-2021-operations-report.pdf (Apr. 2022).  NICS strives to maintain an immediate determination rate of 90% or higher, as requested by the Attorney General, *see id.*, although it is not required by statute or regulation to do so.

https://www.nytimes.com/article/uvalde-texas-school-shooting.html; Emma Bowman et al., *What We Know So Far About the Buffalo Mass Shooting*, NPR (May 16, 2022), https://www.npr.org/2022/05/15/1099028397/buffalo-shooting-what-we-know.   As its title suggests, the statute was crafted by and enacted with support from members of Congress belonging to both major political parties.  *See, e.g.*, Joint Statement, Senators John Cornyn (R-TX), Chris Murphy (D-CT), Kyrsten Sinema (D-AZ) & Thom Tillis (R-NC), Bipartisan Group of Senators Announce Bipartisan Safer Communities Act (June 22, 2023), https://www.cornyn.senate.gov/news/cornyn-bipartisan-group-of-senators-announce-bipartisan-safer-communities-act/ ("Today, we finalized bipartisan, commonsense legislation to protect America's children, keep our schools safe, and reduce the threat of violence across our country.  Our legislation will save lives and will not infringe on any law-abiding American's Second Amendment rights."); Joint Statement, Senator John Cornyn (R-TX) et al., Bipartisan Senators Announce Agreement (June 12, 2023), https://www.cornyn.senate.gov/news/cornyn-bipartisan-senators-announce-agreement/ ("[O]ur plan saves lives while also protecting the constitutional rights of law-abiding Americans.").

Among its key provisions, the BSCA expands access to mental health services for children and families, including in schools, *see* 42 U.S.C. §§ 1396a note, 1396d note, 254c-19; enhances penalties for firearms trafficking and straw purchasing, meaning illegally posing as the actual buyer of a firearm purchased for someone else, *see* 18 U.S.C. §§ 932, 933; and prohibits individuals convicted of certain domestic violence offenses while in a current or recent dating relationship with the victim from receiving or possessing firearms or ammunition in or affecting interstate or foreign commerce, thereby closing what was known colloquially as the "boyfriend loophole," *see* 18 U.S.C. § 921(a)(33)(A)(ii), (a)(33)(C), (a)(37); *id.* § 922(g)(9).

As relevant here, the BSCA also augments the background check process for prospective firearms transferees under twenty-one years of age.  When such persons attempt to receive a firearm

6

from an FFL, in addition to conducting the national database search described above, NICS also must immediately contact: (i) the criminal history repository or juvenile justice information system, as appropriate, of the state in which the prospective transferee resides; (ii) the appropriate state custodian of mental health adjudication records in the state in which the prospective transferee resides; and (iii) a local law enforcement agency of the jurisdiction in which the prospective transferee resides, to determine whether the prospective transferee has a juvenile record that would prohibit the sale or transfer of a firearm to that person pursuant to 18 U.S.C. § 922(d).  34 U.S.C. § 40901(*l*)(1).

An FFL may complete the transfer to an eighteen- to twenty-year-old prospective transferee once either (i) NICS sends a follow-up "proceed" response, or (ii) three business days have elapsed since the FFL contacted NICS, and NICS has neither sent a follow-up "denied" response, nor notified the FFL that cause exists to further investigate a possibly disqualifying juvenile record—whichever occurs first.  18 U.S.C. § 922(t)(1)(C)(i), (ii).  Alternatively, if NICS notifies the FFL within three business days that there is cause for further investigation, the FFL may complete the transfer once either (i) NICS sends a follow-up "proceed" response, or (ii) ten business days have elapsed since the FFL contacted NICS, during which NICS has not sent a follow-up "denied" response—whichever occurs first.  *Id.* § 922(t)(1)(C)(i), (iii).

### D.    Results of the Background Check Provisions of the Brady Act & the BSCA

Since 1998, background checks conducted through NICS have resulted in over 2 million denials of firearm transfers to prohibited persons.  *Federal Denials*, FBI, [https://www.fbi.gov/file-repository/federal_denials.pdf](https://www.fbi.gov/file-repository/federal_denials.pdf) (last visited May 22, 2023).  Moreover, since the BSCA took effect, the FBI has denied more than 160 firearm transfers solely as a result of those enhanced background checks, *i.e.*, after the initial database search revealed no responsive records.  *See* Fact Sheet, The White House, President Biden Announces 13 New Actions to Reduce Gun Violence by Maximizing the Benefits of the Bipartisan Safer Communities Act (May 14, 2023),

https://www.whitehouse.gov/briefing-room/statements-releases/2023/05/14/fact-sheet-president-biden-announces-13-new-actions-to-reduce-gun-violence-by-maximizing-the-benefits-of-the-bipartisan-safer-communities-act/ ("BSCA Fact Sheet").

## II.  Factual & Procedural Background

Mr. McRorey and Ms. Flores each initiated the purchase of a firearm from an FFL in Texas on May 12, 2023.  Compl. ¶¶ 73, 81, ECF No. 1.  Because Mr. McRorey and Ms. Flores are both under twenty-one, *id.* ¶¶ 2-3, NICS initiated the enhanced background check process required under the BSCA, *see id.* ¶¶ 73-74, 81-82; *see* 34 U.S.C. § 40901(*l*); 18 U.S.C. § 922(t)(1)(C).

Also on May 12, 2023, alongside GOA and GOF, Mr. McRorey and Ms. Flores filed this action against Merrick B. Garland, in his official capacity as Attorney General of the United States, and the FBI.  Compl. ¶¶ 4-5, 8-9.  Plaintiffs claim that the enhanced background check provisions violate both the Second and Fifth Amendments of the United States Constitution, and they seek declaratory and injunctive relief.  *Id.* ¶¶ 86-96.  Plaintiffs filed the instant motion for a TRO, preliminary injunction, and/or permanent injunction the same day as their Complaint, Mot. for TRO, Prelim. Inj., and/or Permanent Injunction (May 12, 2023), ECF No. 2, seeking relief solely based on their Second Amendment claim, *see generally* Mem. of P. & A. in Supp. of Pls.' Mot. for TRO, Prelim. Inj., and/or Permanent Injunction (May 12, 2023), ECF No. 3 ("Pls.' Mot.").  Later on May 12, 2023, the Court entered an Order concluding that Plaintiffs had not established that *ex parte* relief was warranted; ordering Defendants to respond to Plaintiffs' motion by May 22, 2023; and ordering Plaintiffs to file any reply by May 26, 2023.  Order (May 12, 2023), ECF No. 6.

On May 18, 2023, NICS informed the FFL from which Mr. McRorey has attempted to purchase a firearm that NICS had approved his transaction, thereby permitting the FFL to complete the firearm transfer to Mr. McRorey.  *See* Decl. of David Alan Fazzini ¶ 4(c), (d), ECF No. 14-1.  As of this filing, Ms. Flores's background check remains pending; unless her background check is denied

by May 26, 2023—ten business days after her attempted purchase—the FFL from whom she attempted to purchase a firearm will be permitted to complete the sale when it receives an approval from NICS or as of 12:01 a.m. on May 27, 2023, whichever occurs sooner. *See id.* ¶¶ 5(c), (d).

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction or a TRO, a plaintiff must establish: "(1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 261 (5th Cir. 2022); *see Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 644-45 (N.D. Tex. 2021) ("A TRO is 'simply a highly accelerated and temporary form of preliminary injunctive relief,' which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." (quoting *Hassani v. Napolitano*, No. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. 2009))). "The 'burden of persuasion on all of the four requirements . . . is at all times upon the plaintiff.'" *CAE Integrated*, 44 F.4th at 261 (quoting *Canal Authority of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). "[I]f a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Greer's Ranch Cafe*, 540 F. Supp. 3d at 645 (emphasis in original) (quoting *Speed v. America's Wholesale Lender*, 2014 WL 4755485 (N.D. Tex. 2014)).

"The standard for issuing a permanent injunction is 'essentially the same' as the standard for issuing a preliminary injunction," except that, "[i]nstead of proving a substantial likelihood of success on the merits, . . . the plaintiff must actually prevail on the merits." *Dung Quoc Pham v. Blaylock*, 712 F. App'x 360, 365 (5th Cir. 2017) (quoting *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004)).

## ARGUMENT

I.      **The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs' Claims Are Moot or Will Soon Become Moot.**

As noted, Mr. McRorey and Ms. Flores each attempted to purchase a firearm from an FFL on May 12, 2023, the same day they filed their Complaint.  On May 18, 2023, NICS informed the FFL from which Mr. McRorey has attempted to purchase a firearm that NICS had approved his transaction, thereby permitting the FFL to complete the firearm transfer to Mr. McRorey.  *See supra* page 8.  Accordingly, Mr. McRorey's Second Amendment claim—which was predicated solely on the delay in his ability to obtain a firearm while NICS completed his enhanced background check, *see* Compl. ¶¶ 74-75—is now moot.  *See, e.g.*, *Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019) ("A case becomes moot when '[t]he requisite personal interest that must exist at the commencement of the litigation' ceases to exist because 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" (footnotes omitted) (alteration in original) (first quoting *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999), and then quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

Additionally, for analogous reasons, Ms. Flores's Second Amendment claim will be moot no later than 12:01 a.m. on May 27, 2023, when her attempted transfer will be permitted under federal law absent an intervening approval or denial.  *See supra* pages 8-9.

Plaintiffs are mistaken to contend that their claims "will not be mooted even upon a successful firearm purchase by the individual Plaintiffs, as the harm sought to be alleviated is 'capable of repetition, yet evading review." Pls.' Mot. at 4.   "[T]he capable-of-repetition-yet-evading-review doctrine is an exception to the general rule that federal courts do not have jurisdiction over moot cases."  *Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  It thus "applies only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  To successfully invoke the doctrine, a plaintiff must establish both that "(1) the challenged action is in its duration too short to be fully litigated prior to

its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439-440, (2011)); *see Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (noting that the plaintiff bears the burden as to both requirements).

The record here does not satisfy Plaintiffs' burden as to the second requirement. Mr. McRorey and Ms. Flores aver merely that they "fully intend to purchase additional firearms in the future, including before [they] turn 21." Decl. of Ethan McRorey ¶ 12, ECF No. 1-6; Decl. of Kaylee Flores ¶ 10, ECF No. 1-7. But such "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be" do not satisfy the "reasonable expectation" requirement. *O'Brien v. Calvo*, No. 12-cv-2700-ARR-MDG, 2013 WL 1247521, at \*7 (E.D.N.Y. Mar. 27, 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Accordingly, the Court lacks subject-matter jurisdiction over Plaintiffs' claims as to Mr. McRorey and will soon lack subject-matter jurisdiction over Plaintiffs' claims as to Ms. Flores, because their alleged injuries will have been resolved without judicial intervention. *See, e.g.*, *Robinson v. Ferguson*, 849 F. App'x 77, 79 (5th Cir. 2021) ("Mootness is jurisdictional; it determines whether a federal court has subject matter jurisdiction under Article III, Section 2 of the Constitution to hear a case." (footnote omitted)).

## II.     Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits.

The Constitution protects the right "to keep and bear Arms," U.S. Const. amend. II, but "[l]ike most rights, the right secured by the Second Amendment is not unlimited," *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Plaintiffs assert that the enhanced background check provisions violate the Second Amendment because Plaintiffs may be required to wait up to ten business days to complete their purchase of a firearm from a commercial dealer while a background check is completed, to ensure

they are lawfully permitted to receive such a firearm.[3]   Even if individuals under the age of twenty-one fell within the scope of the Second Amendment—which they do not, *see infra* pages 16-23—the potential delay that Plaintiffs challenge does not rise to the level of an infringement on that right.   At a minimum, it is consistent with the Second Amendment for Congress to require enhanced background checks for those between the ages of eighteen and twenty, who were considered minors when the Second Amendment was ratified, who seek to obtain firearms from federally licensed, commercial dealers.

### A.   The Commercial Sale Regulations Challenged Here Do Not Implicate Conduct Protected Under the Second Amendment.

Plaintiffs' Second Amendment claim fails as a threshold matter because the Supreme Court has repeatedly emphasized that background checks and other regulations governing the commercial sale of arms do not implicate the Second Amendment.   In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court emphasized that nothing in its opinion "should be taken to cast doubt" on "laws imposing conditions and qualifications on the commercial sale of arms."   *Id.* at 626-27 & n.26. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court "repeat[ed]" its "assurances" that *Heller*

---

[3] Plaintiffs doubly misapprehend the enhanced background check provisions in contending that they "automatically impos[e] a delay . . . of *at least* several days," Pls.' Mot. at 6, and that this delay is "indefinite" in duration, *id.* at 1.   First, the provisions do not impose a minimum delay of several days between an attempted purchase and the completion of an enhanced background check.   Rather, the enhanced background check may be completed as soon as NICS receives responses from the relevant state entities, *see supra* pages 6-7.   Second, the provisions *do* impose a maximum duration on the enhanced background check, which is accordingly not "indefinite."   Absent an express denial, an FFL is permitted to complete the transfer of a firearm to an eighteen- to twenty-year-old within a maximum of three business days—the same maximum duration as the background check for any adult—or ten business days, if cause supports further investigation.   *See* 18 U.S.C. § 922(t).   To the extent that any FFL voluntarily declines to complete a transaction after that time period has expired, a private entity's discretionary policy decision is not traceable to federal law and cannot establish a Second Amendment violation.   *See, e.g.*, *Turaani v. Wray*, 988 F.3d 313, 316-17 (6th Cir. 2021) (first citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989), and then citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42-43 (1976)), *cert. denied*, 142 S. Ct. 225 (2021).

did not "cast doubt on such longstanding regulatory measures" as "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 786; *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that nothing in *Bruen* "should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms").

The enhanced background check provisions regulate only the commercial sale of firearms by FFLs. *See* 34 U.S.C. § 40901(*l*); 18 U.S.C. § 922(t)(1)(C). The Supreme Court's emphatic assurances in *Heller*, *McDonald*, and *Bruen* therefore apply with full force here.

Plaintiffs contend that "the right to 'keep and bear' arms would be meaningless if one could not even obtain arms." Pl.'s Mot. at 7. But this proposition fails to advance their Second Amendment claim, because Plaintiffs complain only of a days-long delay in obtaining the firearms they wish to purchase; they do not allege that the challenged provisions prevent anyone who is permitted to possess firearms from "even obtain[ing]" them. Indeed, the cases on which Plaintiffs rely reflect that, while an extraordinarily "severe[]" restriction on purchasing or training in the use of firearms may, as a practical matter, implicate the Second Amendment, *see Ezell v. City of Chicago*, 846 F.3d 888, 894 (7th Cir. 2017), less extensive restrictions that do not "meaningfully constrain[]" the possession or use of firearms do not, *see Teixeira v. County of Alameda*, 873 F.3d 670, 679-80 (9th Cir. 2017) (en banc). Likewise, in *Bezet v. United States*, 714 F. App'x 336 (5th Cir. 2017), the Fifth Circuit referred in dictum to "the core Second Amendment guarantee of acquiring firearms to protect one's hearth and home," *id.* at 341—not to acquiring them from any particular source or without regulation of the manner of purchase from that source.

With respect to *United States v. Hicks*, 2023 U.S. Dist. LEXIS 35485 (W.D. Tex. Jan. 9, 2023), *appeal docketed*, No. 23-50030 (5th Cir. Jan. 12, 2023), and *Fraser v. BATFE*, 2023 U.S. Dist. LEXIS 82432 (E.D. Va. May 10, 2023), *see* Pls.' Mot. at 7, Defendants respectfully disagree with the district courts' conclusions and analysis. In any event, those decisions are inapposite. *Hicks* addressed a

13

prohibition on the receipt—from any source—of a firearm by a person under felony indictment, *see* 2023 U.S. Dist. LEXIS 35485, at *1, while *Fraser* addressed a restriction on the purchase of a handgun from an FFL by eighteen- to twenty-year-olds, *see* 2023 U.S. Dist. LEXIS 82432, at *4 (citing 18 U.S.C. § 922(b)(1)).  By contrast, the provisions challenged here do not prohibit anyone who is permitted to possess firearms from obtaining them from an FFL—much less from any other source, to whom the provisions do not even apply.[4]

In sum, Plaintiffs' cited authorities stand, at most, for the proposition that a commercial regulation so severe that it effectively inhibits law-abiding, responsible, adults "from keep[ing] and bear[ing] Arms," U.S. Const. amend. II, may violate the Second Amendment.  Plaintiffs make no attempt to establish that the challenged provisions of the BSCA meet that standard.  Instead, they argue that a delay of up to ten business days in the purchase of a firearm while a background check remains pending categorically violates the Second Amendment.  *See, e.g.*, Pls.' Mot. at 1 (arguing that the provisions "delay[] the exercise of and thereby infring[e] the right to keep and bear arms").

Plaintiffs' theory is foreclosed by the Supreme Court's recent decision in *Bruen*, on which Plaintiffs purport to rely.  Although *Bruen* invalidated New York's "may issue" licensing regime, it approved "shall-issue" regimes that "require applicants to undergo a background check."  142 S. Ct. at 2124, 2138 & n.9; *see id.* at 2138 n.9 ("[N]othing in our analysis should be interpreted to suggest the

---

[4] To the extent that Plaintiffs purport to rely on a question posed by Judge Richardson during an oral argument before the Fourth Circuit in *Maryland Shall Issue, Inc. v. Moore*, No. 21-2017 (4th Cir.), *see* Pls.' Mot. at 14-15, that case concerns a more restrictive regulation than the provisions challenged here, requiring prospective handgun transferees to obtain a permit—subject to requirements including a background check, fingerprinting, completion of a firearms safety training course, and payment of a fee—before being permitted to undergo a separate background check required to complete the transfer.  *See* Md. Code Ann. §§ 5-117, 5-117.1.  By contrast, the provisions that Plaintiffs challenge do not require eighteen- to twenty-year-olds to satisfy any such threshold requirements before being permitted to undergo a background check in connection with the transfer of a firearm from an FFL.  Moreover, *Maryland Shall Issue* is further inapposite in that individuals under the age of twenty-one are not eligible even to apply for the relevant permit under the provisions at issue in that case.  *See id* § 5-117.1(d)(1).

unconstitutionality of the 43 States' 'shall-issue' licensing regimes . . . ."); *id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.").[5]  The vast majority of those shall-issue licensing regimes, in turn, provide for a period of time significantly longer than ten business days—including as long as 120 days, depending on the State—to complete the applicant's background check.[6]  Moreover, these regimes do not merely impose restrictions on the commercial sale of firearms by FFLs, like the provisions that Plaintiffs challenge here, but rather directly implicate "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122.

---

[5] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *Bruen*, 142 S. Ct. at 2123.  By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria." *Id.* at 2124.

[6] *See, e.g.*, Nev. Rev. Stat. Ann. §§ 202.3657, 202.366(3) (120 days); Colo. Rev. Stat. Ann. § 18-12-206(1) (ninety days); Fla. Stat. Ann. § 790.06(6)(c) (ninety days); Idaho Code Ann. § 18-3302K(1) (ninety days); 430 Ill. Comp. Stat. Ann. § 66/10(e) (ninety days); S.C. Code Ann. § 23-31-215(C) (ninety days); Ariz. Rev. Stat. Ann. § 13-3112(H) (sixty days for processing, plus fifteen working days to issue the permit); Okla. Stat. Ann. tit. 21, § 1290.12(13) (sixty to ninety days, depending on the results of a background check); Utah Code Ann. § 53-5-704.5(1)(a) (sixty days); Wyo. Stat. Ann. § 6-8-104(m) (sixty days); Mich. Comp. Laws Ann. § 28.425b(13) (forty-five days); Miss. Code. Ann. § 45-9-101(6)(c) (forty-five days); Mo. Ann. Stat. § 571.101(5)(2) (forty-five days); Mont. Code Ann. § 45-8-321(1) (sixty days); Neb. Rev. Stat. Ann. § 69-2430(3)(b) (forty-five days); N.M. Stat. Ann. §§ 29-19-4; 29-19-6(A) (forty-five days); N.C. Gen. Stat. Ann. §§ 14-415.11, 14-415.15 (forty-five days); Or. Rev. Stat. Ann. §§ 166.291, 166.292(1) (forty-five days); 18 Pa. Stat. and Cons. Stat. Ann. § 6109(e)(1) (forty-five days); Va. Code Ann. § 18.2-308.04(C) (forty-five days); W. Va. Code Ann. § 61-7-4(g) (forty-five days); Ala. Code § 13A-11-75(c) (thirty days); Alaska Stat. Ann. § 18.65.700(b) (thirty days); Me. Rev. Stat. tit. 25, § 2003(12) (thirty to sixty days, depending on State residency status and history); Minn. Stat. Ann. § 624.714(6) (thirty days); Ohio Rev. Code Ann. § 2923.125(D) (thirty days); Tex. Gov't Code Ann. § 411.177(c) (thirty days); Wash. Rev. Code Ann. § 9.41.070(1) (thirty to sixty days, depending on history of State residency and documentation); Wis. Stat. Ann. § 175.60(9)(b) (twenty-one days); Ky. Rev. Stat. Ann. § 237.110(9) (fifteen days for electronic applications; sixty days for paper applications); N.H. Rev. Stat. Ann. § 159:6(I)(b) (fourteen days); *see Bruen*, 142 S. Ct. at 2124 n.1 (2022) (compiling statutes).  *But see* S.D. Codified Laws §§ 23-7-7.1, 23-7-7.7 (five days).

To be sure, the Court also declined in *Bruen* to "rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications . . . deny ordinary citizens their right to public carry."  142 S. Ct. at 2138; *see also id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice").  This makes sense, given that the Court's discussion of shall-issue regimes was intended in part to offer guidance to States whose may-issue regimes were invalidated as to constitutional alternatives.  *See id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[T]he 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States").[7]  Here, however, there is no risk of "lengthy wait times," because—as noted—the statutory scheme imposes a shorter deadline for completion of the enhanced background check than most States provide in the context of their shall-issue permitting regimes, and if the FBI does not complete a background check within the requisite time period, the FFL automatically is permitted to complete the transfer.

**B.     In Light of Founding Era History, as Interpreted by the Fifth Circuit, the Second Amendment Does Not Secure a Right to Bear Arms Before the Age of Twenty-One.**

The Court need go no further to conclude that Plaintiffs are unlikely to succeed on the merits of their Second Amendment claim.  In any event, their claim also fails for a second independent reason, namely, that the Second Amendment secures a right to keep and bear arms only to individuals

---

[7] Moreover, at least one State of whose licensing regime the Court approved in *Bruen* does not appear to impose any deadline on the processing of concealed-carry permit applications.  *See* La. Stat. Ann. § 40:1379.3(H)(2) ("The deputy secretary of public safety services of the Department of Public Safety and Corrections shall issue *timely and without delay* the concealed handgun permit to all qualified applicants . . . ." (emphasis added)); *Bruen*, 142 S. Ct. at 2124 n.1 (2022).

twenty-one years of age and older—the universally recognized age of majority at the time of the Amendment's ratification.  As the Fifth Circuit explained in *NRA v. ATF*, 700 F.3d 185 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111—based on an extensive analysis of Founding and Reconstruction Era materials, *NRA*, 700 F.3d at 199-204—"[m]odern restrictions on the ability of persons under 21 to purchase handguns . . . seem, to [the court], to be firmly historically rooted." *Id.* at 204; *see also NRA v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013) (stating that "age-based restrictions on access to and use of firearms" are "likely outside the scope of the Second Amendment," because they are "consistent with . . . the 'longstanding tradition of age-and safety-based restrictions on the ability to access arms'" (quoting *NRA*, 700 F.3d at 203)).  Indeed, this Court has recognized that, "in *NRA*, the Fifth Circuit found historic traditions of age restrictions for the possession of firearms dating back to the Revolution." *Mance v. Holder*, 74 F. Supp. 3d 795, 805 (N.D. Tex. 2015) (citing *NRA*, 700 F.3d at 204 n.17), *rev'd and vacated on other grounds sub nom. Mance v. Sessions*, 880 F.3d 183 (5th Cir. 2018), *withdrawn and superseded on denial of reh'g en banc*, 896 F.3d 699 (5th Cir. 2018), *and rev'd and vacated sub nom. Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018).  Although the Fifth Circuit in *NRA* proceeded, "in an abundance of caution," 700 F.3d at 204, to hold in the alternative that a federal restriction on the sale of handguns by FFLs to persons under the age of twenty-one satisfied the means-end test that *Bruen* later disapproved, *see* 142 S. Ct. at 2127, the *NRA* Court's detailed review of the historical record demonstrates that restrictions on the commercial sale of firearms to eighteen-to twenty-year-olds satisfy *Bruen*'s historical standard.[8]

---

[8] The question whether the same federal restriction at issue in *NRA* is consistent with the Second Amendment is again pending before the Fifth Circuit.  *See Reese v. ATF*, No. 23-30033 (5th Cir. Jan. 13, 2023).  In that action, the district court correctly recognized that the *NRA* Court's "discussion of the historical record in NRA satisfies the *Bruen* test." *Reese v. ATF*, No. 6:20-CV-01438, --- F. Supp. ---- 3d, 2022 WL 17859138, at *10 (W.D. La. Dec. 21, 2022).  Accordingly, the court "h[eld] that the Second Amendment does not protect the ability of 18 to 20-year-olds to purchase handguns from federal firearms licensees," "[e]ssentially . . . for the[] [same] reasons set forth by the Fifth Circuit in *NRA*." *Id.*

To be sure, the Fifth Circuit in *NRA* did not hold that the restriction on firearm sales to eighteen- to twenty-year-olds challenged in that case—a commercial regulation considerably more burdensome than the enhanced background provisions challenged here—was constitutionally permissible *solely* as a matter of the Second Amendment's text and history, although it was "inclined" to do so.  700 F.3d at 204.  Rather, as noted, the court proceeded, "in an abundance of caution," also to apply the now-abrogated interest-balancing test, "ultimately conclud[ing] that the challenged federal laws pass constitutional muster even if they implicate the Second Amendment guarantee."  *Id.*[9]  The *Bruen* Court invalidated the interest-balancing test that *NRA* applied as an alternative basis for its holding, while reaffirming that courts must assess Second Amendment claims solely in light of the Amendment's text and history.  *See* 142 S. Ct. at 2127.  The logical implication is that, under *Bruen*, the *NRA* panel would have affirmed the challenged ban solely on the basis of its exhaustive review of Founding and Reconstruction Era history.  And, in any event, even to the extent that *NRA* does not squarely control the outcome of this case, courts in this Circuit have recognized that dicta of a Fifth Circuit panel is "entitled to great weight" as "persuasive authority" absent a contrary holding.  *Texas v. Ysleta del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 639971, at *8 (W.D. Tex. Feb. 14, 2019) (quoting *O'Dell v. N. River Ins. Co.*, 614 F. Supp. 1556, 1559 (W.D. La. 1985)), *aff'd*, 955 F.3d 408 (5th Cir. 2020), *as revised* (Apr. 3, 2020), *rev'd and remanded on other grounds*, 142 S. Ct. 1929 (2022), *and vacated and remanded*, 41 F.4th 481 (5th Cir. 2022); *accord 16 Front St. LLC v. Mississippi Silicon, LLC*, No. 1:14-

---

[9] The Fifth Circuit explained its belt-and-suspenders approach in *NRA* based in part perceived "institutional challenges in conducting a definitive review of the relevant historical record."  *Id.* Thereafter, however, the Supreme Court clarified in *Bruen* that "[c]ourts are . . . entitled to decide a case based on the historical record compiled by the parties."  142 S. Ct. at 2130 n.6.

CV-00183-DMB, 2015 WL 4665223, at *11 (N.D. Miss. July 30, 2015), *aff'd*, 886 F.3d 549 (5th Cir. 2018).[10]

In particular, the Fifth Circuit in *NRA* properly recognized that legislatures have long held authority to set age qualifications for various rights. 700 F.3d at 204 & n.17. And Plaintiffs appear to accept that legislatures may impose some age-based restrictions on the commercial sale of arms, as they do not appear to contend that the Second Amendment secures the right to access arms to those under the age of eighteen. *See also Bruen*, 142 S. Ct. at 2134 (indicating that the Second Amendment right does not extend beyond "ordinary, law-abiding, *adult* citizens" (emphasis added)).

For the Second Amendment's ratifiers, a natural point at which to draw the line between underage individuals and responsible adults was age 21. As the Fifth Circuit observed in *NRA*, "[t]he age of majority at common law was 21" and individuals under that age were classified as "minor[s]" or "infant[s]." 700 F.3d at 201-02; *see* William Blackstone, 1 *Commentaries on the Laws of England* 463 (1765) ("So that full age in male or female, is twenty one years[] . . . who till that time is an infant, and so styled in law."). Following the common law approach, the "American colonies, then the United States, adopted age twenty-one as the near universal age of majority." Vivian Hamilton, Adulthood in Law and Culture, 91 TUL. L. REV. 55, 64 (2016). Among other examples of rights denied to eighteen- to twenty-year-olds at the time of the Founding, individuals in that age group generally were not permitted to vote, Pamela S. Karlan, *Ballots and Bullets: The Exceptional History of the Right to Vote*, 71 U. CIN. L. REV. 1345, 1345, 1358-59 (2003); to "claim the right of petition," Saul Cornell, *"Infants" and*

---

[10] In *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) (en banc), the *en banc* Fifth Circuit held that the Supreme Court's decision in *Bruen* rendered certain "prior precedent obsolete." *Id.* at 451. The relevant precedent was fundamentally different from *NRA*, however, in that the holdings of the relevant cases were predicated solely on the means-ends scrutiny that *Bruen* invalidated, not on a conclusion that the restrictions at issue fell outside the scope of the Second Amendment, as informed by text and history. *See United States v. Emerson*, 270 F.3d 203, 260-65 (5th Cir. 2001); *United States v. McGinnis*, 956 F.3d 747, 756-60 (5th Cir. 2020).

*Arms Bearing in the Era of the Second Amendment: Making Sense of the Historical Record*, 40 YALE L. & POL. REV. INTER ALIA 1, 8 (2021); to enter many kinds of contracts, see Zephaniah Swift, 1 A SYSTEM OF THE LAWS OF THE STATE OF CONNECTICUT 213-16 (Windham & John Bryne eds., 1795); or to serve on juries, see Albert W. Alschuler & Andrew G. Deiss, *A Brief History of the Criminal Jury in the United States*, 61 U. CHI. L. REV. 867, 877 n.52 (1994) (finding no evidence that historical legislatures authorized individuals under the age of 21 to serve on juries).

These and other historical age restrictions reflect the Founders' view that reason and judgment are not fully developed before the age of 21.  For example, John Adams explained that individuals under that age could not vote because they lack "[j]udgment" and "[w]ill" and are not "fit to be trusted by the [p]ublic."  *Letter from John Adams to James Sullivan* (26 May 1776) (on file with the National Archives), https://perma.cc/CE79-RA8K.  Thomas Jefferson similarly placed "infants"—a term that then encompassed all "persons under the age of 21," *NRA*, 700 F.3d at 201—in the same category as "maniacs," "drunkards," and others who "cannot take care of themselves," *Letter from Thomas Jefferson to Samuel Smith*, (3 May 1823) (on file with the National Archives), https://perma.cc/2CJB-N7RS ("Jefferson Letter").

Age-based firearms regulations thus accord with legislatures' more general authority to disarm groups historically deemed irresponsible.  The Supreme Court has repeatedly described the class of individuals to which the right extends as "law-abiding, responsible citizens."  *See, e.g.*, *Heller*, 554 U.S. at 635; *Bruen*, 142 S. Ct. at 2156.  Consistent with that understanding of the right's scope, the Court cautioned in *Heller* that "nothing in [its] opinion should be taken to cast doubt" on "longstanding prohibitions on the possession of firearms," including regulations disarming "felons and the mentally ill." 554 U.S. at 626.  *Heller* provided these "only as examples" and left the identification of additional categories of lawful regulations "to future evaluation."  *Id.* at 627 n.26, 635.  A plurality of the Court

"repeat[ed]" these "assurances" in *McDonald*, 561 U.S. at 786, and in *Bruen*, six Justices reiterated these assurances yet again.[11]

Like those groups whose disarmament the Supreme Court has approved, see *Heller*, 554 U.S. at 626, eighteen- to twenty-year-olds historically were viewed as presenting a heightened risk to "public safety," *NRA*, 700 F.3d at 204, *see id.* at 205-06. The same deficiencies in judgment and reason that led the founders to designate individuals in that age group as "infants," *id.* at 201, also inhibit safe firearms ownership, *see id.* at 198-200. It is therefore inconceivable that the Second Amendment's ratifiers—who deemed eighteen- to twenty-year-olds unable to "take care of themselves," Jefferson Letter—nevertheless regarded them as constitutionally entitled to acquire lethal weapons without a thorough background check.

Plaintiffs offer no compelling basis to depart from the Fifth Circuit's historical analysis in *NRA*. Indeed, Plaintiffs address the Court's opinion in *NRA* only in a single, cursory "*But see . . .*" citation. *See* Pls.' Mot. at 8. They principally rest their contention that the Second Amendment secures a right to keep and bear arms to eighteen- to twenty-year-olds on the premise that males as young as sixteen or eighteen served in the militia at the time of the Founding. *See* Pls.' Mot. at 8. But the Fifth Circuit rejected that argument in *NRA*, *see* 700 F.3d at 204 n.17—and with good reason. For starters, the Supreme Court has explained that the right to bear arms, as understood by the Founders, is "unconnected with militia service." *Heller*, 554 U.S. at 582; *see NRA*, 700 F.3d at 204 n.17. In any event, the National Militia Act of 1792, on which Plaintiffs rely, *see* Pls.' Mot. at 8, "gave States discretion to impose age qualifications on service," *NRA*, 700 F.3d at 204 n.17; *see* National Militia Act of 1792 § 2, 1 Stat. 271, 272 (1792) (excluding from the militia "all persons who now are or may hereafter be exempted by the laws of the respective states"). Consistent with that authority, "in some

---

[11] *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); *id.* at 2157 (Alito, J., concurring); *id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

colonies and States, the minimum age of militia service either dipped below age 18 or crept to age 21, depending on legislative need." *NRA*, 700 F.3d at 204 n.17 (citing examples). "Such fluctuation undermines [any] militia-based claim that the right to purchase arms must fully vest precisely at age 18." *Id.*

Plaintiffs also devote several paragraphs of their brief to challenging the Eleventh Circuit's recent decision in *NRA v. Bondi*, 61 F.4th 1317 (11th Cir. 2023)—in which the court held that a Florida law banning the sale of all firearms to those under twenty-one—a law far more restrictive than the one challenged here-- "is consistent with our Nation's historical tradition of firearm regulation," *id.* at 1320. Although Plaintiffs contend that the Eleventh Circuit "placed undue emphasis on Reconstruction Era analogues," Pls.' Mot. at 11, Plaintiffs concede that "Reconstruction Era sources may well *confirm* a historical tradition." *See also id.* at 6 n.2. Indeed, the nineteenth-century prohibitions addressed in *Bondi* trace their origins to Founding Era practices described above. In any event, the Court need not consider Reconstruction Era history to conclude that Plaintiffs have not demonstrated a likelihood of success on the merits of their Second Amendment claim.

Finally, Plaintiffs purport to rely on three district court cases for the proposition that the challenged provisions violate the Second Amendment rights of eighteen- to twenty-year-olds, *see* Pls.' Mot. at 7, but those decisions are inapposite. In *Firearms Policy Coalition Inc. v. McCraw*, No. 4:21-cv-1245, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022), for example, the court invalidated a state law prohibiting eighteen- to twenty-year-olds from carrying handguns in public, but expressly noted that a challenge to a law restricting the commercial *sale* of handguns to the same age group would present a "wholly different" case. *Id.* at *7; *see also Worth v. Harrington*, No. 21-cv-1348, 2023 WL 2745673, at *12 (D. Minn. Mar. 31, 2023) ("The contour of the Second Amendment right that we are addressing in this case is not whether a law prohibiting the *sale* of handguns to 18-to-21-year-olds is consistent with the nation's history and tradition of firearm regulation . . . . Instead, the issue here concerns the

right of that cohort to publicly carry a handgun for self-defense."). Thus, by their express terms, these cases have no application here, where Plaintiffs challenge a restriction on the commercial sale of firearms to eighteen- to twenty-year-olds by federally-licensed dealers. For similar reasons, Plaintiffs' purported reliance on *Beeler v. Long*, No. 21-cv-152 (KAC/DCP) (E.D. Tenn. Mar. 24, 2023), ECF No. 50, is misplaced. That case concerned a Tennessee law that banned eighteen- to twenty-year-olds from carrying handguns or obtaining permits to carry handguns concealed. *See Beeler*, No. 21-cv-152 (KAC/DCP), ECF No. 50-1, at 2. Moreover, the parties in *Beeler* settled their claims, *see Beeler*, No. 21-cv-152 (KAC/DCP), ECF No. 50, and the court thus never rendered a decision on the merits.

Once again, the shall-issue regimes that the Supreme Court stated in *Bruen* are facially constitutional are instructive. Those licensing regimes typically preclude individuals under the age of twenty-one from carrying firearms in public.[12] The Supreme Court's express statement that these regimes are constitutional unless applied to abusive ends confirms what the Fifth Circuit recognized in *NRA*—namely, that the Second Amendment's text and history establish that the right to keep and bear arms belongs to individuals aged twenty-one and older.

### III.   Plaintiffs Have Not Shown That They Will Incur Irreparable Harm Absent a Preliminary Injunction.

As noted above, *see* supra page 8, Mr. McRorey's enhanced background check was completed on May 18, 2023. Ms. Flores's background check remains pending, and her firearm transfer will be permitted no later than May 27, 2023, absent an intervening denial. Thus, no later than May 27,

---

[12] *See, e.g.*, Ariz. Rev. Stat. Ann. § 13-3112(E)(2) (permit available only to those "twenty-one years of age or older," with limited exception for those who serve in the armed forces); Colo. Rev. Stat. § 18-12-203(1)(b) (permit only available to someone who "[i]s twenty-one years of age or older"); Fla. Stat. § 790.06(2)(b) (license only available to someone "21 years of age or older"); Ga. Code. Ann. § 16-11-129(b)(2)(A) (license only available to those over "21 years of age," with a limited exception for those who serve in the armed forces); Idaho Code § 18-3302K(4)(a) (license only available to those "over the age of twenty-one (21) years"); 430 Ill. Comp. Stat. 66/25(1) (license only available to those "at least 21 years of age"); *see Bruen*, 142 S. Ct. at 2124 n.1 (compiling statutes).

23

2023—the day after the Court has ordered Plaintiffs to submit any reply in support of their Motion, ECF No. 6—both Plaintiffs' alleged injuries arising from the challenged provisions—namely, a brief delay in obtaining the firearms they attempted to purchase on May 12, 2023—will have been resolved without judicial intervention.[13]

To the extent that the Court adjudicates this motion after Plaintiffs' background checks are complete, Plaintiffs will face no future irreparable harm in connection with their attempted purchases on May 12, 2023.  It is well established that "[t]he function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already." *Lacassagne v. Chapuis*, 144 U.S. 119, 124 (1892); *see also, e.g.*, *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 827 (5th Cir. 2022) (noting that an injunction is "a 'forward-looking' remedy" (quoting *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2210 (2021)).  Thus, "[t]o seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014); *accord Optimus Steel, LLC v. U.S. Army Corps of Engineers*, 492 F. Supp. 3d 701, 725 (E.D. Tex. 2020); *Sierra Club v. United States Army Corps of Engineers*, 482 F. Supp. 3d 543, 557 (W.D. Tex. 2020).

Accordingly, any delay in connection with the enhanced background checks prompted by Plaintiffs' attempts to purchase firearms on May 12, 2023, cannot support a finding of irreparable harm for purposes of preliminary injunctive relief.  *See, e.g.*, *MultiTracks, LLC v. Palmer*, No. A-21-CV-00645-LY, 2021 WL 7184185, at *2 (W.D. Tex. Nov. 18, 2021) ("[A]ny allegations of past harm cannot support a finding of irreparable harm."), *report and recommendation adopted*, No. A:21-CV-00645-LY, 2021

---

[13] Because Plaintiffs challenge solely the enhanced background check provisions of the BSCA, and not the prohibitions on firearms possession and transfers pursuant to the Gun Control Act, as amended, *see* Compl. ¶ 1, any harm resulting from a denial of Ms. Flores's transaction—which would be traceable to the prohibitions themselves, not to the enhanced background check provisions— would not be redressed by the relief that Plaintiffs seek.

WL 7184184 (W.D. Tex. Dec. 6, 2021); *Zurovetz v. Argenbright*, No. 6:19CV481, 2021 WL 970464, at *2 (E.D. Tex. Feb. 8, 2021) (denying a TRO where plaintiff's allegations "indicat[ed] past harm rather than . . . imminent danger"), *report and recommendation adopted*, No. 6:19CV481, 2021 WL 963744 (E.D. Tex. Mar. 15, 2021); *Jones v. Soles*, No. 3:00-CV-1237-M, 2001 WL 34316329, at *2 (N.D. Tex. June 28, 2001) (holding that a plaintiff's "claim of a substantial threat of irreparable injury ha[d] become moot" where the plaintiff had already obtained a "new housing assignment away from [the officer whose conduct he challenged]" and that officer "no longer ha[d] any contact with [the] [p]laintiff").

This bedrock requirement applies with no less force where, as here, a plaintiff raises constitutional claims.  That is, even to the extent that "an alleged deprivation of a constitutional right" constitutes a *per se* irreparable injury, Pls.' Mot. at 4, the deprivation still must not have occurred solely in the past to support injunctive relief, *see, e.g.*, *Mitchell v. Tex. Dep't of Crim. Just.*, No. 3:19-CV-0167, 2021 WL 1115299, at *1, 3 (S.D. Tex. Mar. 8, 2021) (applying this proposition in a case raising both constitutional and statutory claims).  Indeed, in each case on which Plaintiffs rely for this proposition, the alleged constitutional deprivation was ongoing when the court granted preliminary injunctive relief.  *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 294-95 & n.16, 297 (5th Cir. 2012); *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

With respect to any future firearms purchases that Plaintiffs may make before they turn twenty-one, any harm that could arise from the challenged provisions in connection with such purchases is not sufficiently imminent to support the extraordinary remedy of preliminary injunctive relief.  Mr. McRorey and Ms. Flores both state merely that they "fully intend to purchase additional firearms in the future, including before [they] turn 21."  Decl. of Ethan McRorey ¶ 12, ECF No. 1-6; Decl. of Kaylee Flores ¶ 10, ECF No. 1-7.  They offer no further elaboration on the timing or specifics of their future plans to purchase additional firearms.  To warrant preliminary injunctive relief, the

plaintiff must demonstrate a likelihood of irreparable harm "before the merits are fully determined." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); *see e.g.*, *Wortham v. Dun & Bradstreet, Inc.*, 399 F. Supp. 633, 637 (S.D. Tex. 1975) (denying injunctive relief where the "plaintiff w[ould] not suffer irreparable harm before trial on the merits c[ould] be conducted"), *aff'd*, 537 F.2d 1142 (5th Cir. 1976); *Multilift Wellbore Tech. Ltd. v. ESP Completion Techs. LLC*, No. 2:16-CV-01187-RSP, 2017 WL 10222420, at *1 (E.D. Tex. July 25, 2017) (same).[14]  Mr. McRorey and Ms. Flores's general future intentions to purchase additional firearms at some unspecified point before they turn twenty-one fall short of this standard. *See, e.g.*, *Fitz v. Rosenblum*, No. 3:22-CV-01859-IM, 2022 WL 17480937, at *2 (D. Or. Dec. 6, 2022) ("Plaintiffs' conclusory statements that they wish to purchase large-capacity magazines at some point in the future are speculative and insufficient to support a finding of irreparable harm."); *Flanary v. Baltimore Cnty.*, No. CV CCB-16-3422, 2017 WL 1953870, at *8 (D. Md. May 11, 2017) ("[T]he court is not inclined to grant a preliminary injunction based on speculation as to whether a legitimate basis [for doubting that an officer's ability to fully perform her job duties] will exist at some indefinite point in the future, if and when [the officer] completes renewed therapy sessions.").[15]

## IV.     The Balance of Equities and Public Interest Favor Defendants.

Although the balance of the equities and the public interest typically are considered as separate factors in the preliminary injunction analysis, "[t]hese factors merge when the Government is the

---

[14] This standard is more demanding than the requirement for purposes of the capable-of-repetition-yet-evading-review doctrine that "there is a reasonable expectation that the same complaining party will be subjected to the same action again," *Sanchez-Gomez*, 138 S. Ct. at 1540; *see supra* pages 10-11, because in the latter context, the plaintiff need not necessarily demonstrate that the same injurious action is likely to recur during the pendency of the litigation.  Accordingly, even to the extent the Court determines that Plaintiffs' claims are not moot, Plaintiffs still do not satisfy the irreparable harm requirement for a TRO or preliminary injunction.

[15] For analogous reasons, Plaintiffs also fail to demonstrate that, absent a TRO or preliminary injunction, any other member of GOA or GOF faces a concrete threat of irreparable harm before this case may be adjudicated on the merits.

opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, these combined factors strongly counsel against issuing Plaintiffs' requested injunctive relief.

Contrary to Plaintiffs' assertion that the harm that would result from an injunction "is entirely speculative and theoretical," Pls.' Mot. at 15, the Act's enhanced background check provisions have succeeded in preventing numerous purchases of firearms by eighteen-to-twenty-year-olds who are prohibited from possessing firearms. As noted above, since the enhanced background check provisions took effect last year, the Government has denied more than 160 firearms transactions solely as a result of these provisions. *See* BSCA Fact Sheet. Thus, while it is of course true that eighteen- to twenty-year-olds who are prohibited under federal law from possessing firearms "will remain prohibited from such possession" regardless of any injunction, Pls.' Mot. at 15, Plaintiffs overlook the demonstrated reality that, if the enhanced background check provisions were enjoined, the number of eighteen- to twenty-year-old prohibited persons who illegally obtain firearms would increase. Moreover, this increase would disproportionately undermine public safety, given the rate of violent crime committed by young people. For example, in 2019, eighteen- to twenty-year-olds were responsible for approximate 8.9% of violent crime resulting in arrests nationwide, despite comprising only 3.7% of the population. *See, e.g.*, FBI, *Crime in the United States: 2019*, tbl. 38, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-38 (last visited May 22, 2023); U.S. CENSUS BUREAU, *Age and Sex Composition in the United States: 2019*, tbl. 1, https://www2.census.gov/programs-surveys/demo/tables/age-and-sex/2019/age-sex-composition/2019gender_table1.xlsx (last visited May 22, 2023); *see also, e.g.*, *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (noting that the Government has a "compelling interest[]" in protecting "public safety").[16]

---

[16] Although interest-balancing is no longer a proper consideration in adjudicating the merits of a Second Amendment claim, *see Bruen*, 142 S. Ct. at 2127, Plaintiffs cite no authority for their suggestion

Plaintiffs also argue that "it is always in the public interest to enjoin an unconstitutional law." Pls.' Mot. at 16 (citing *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982)). That contention presumes that Plaintiffs will prevail on the merits of their Second Amendment claim—and for the reasons set forth above, they have not established a likelihood of success. *See supra* pages 11-23. In any event, by the same token, in the likelier event that Defendants ultimately prevail on the merits, the Government would "suffer[] a form of irreparable injury" during the pendency of litigation if it were "enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

## V.     Any Relief Ordered Should Be Appropriately Limited.

In the event the Court were to hold that Plaintiffs have satisfied the requirements for a TRO or preliminary injunction, any relief ordered should be no broader than necessary to remedy any demonstrated harms of the individual Plaintiffs in this case. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford,* 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). "A district court abuses its discretion if it does not 'narrowly tailor an injunction to remedy the specific action which gives rise to the order.'" *ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022).

---

that the Court need not consider the balance of equities or the public interest—including in public safety—in evaluating a request for preliminary injunctive relief, or for their suggestion that the plaintiffs are relieved of their burden to satisfy all four factors governing a request for such relief, where the underlying substantive claims are predicated on the Second Amendment,  *see* Pls.' Mot. at 16.

Although Plaintiffs urge this Court to enter a nationwide preliminary injunction, *see* Pls.' Mot. at 17, they offer no basis to conclude that this case is an appropriate vehicle for "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam); *see id.* at 264 (granting stay pending appeal to all but the plaintiff-states); *see also Trump v. Hawaii*, 201 L. Ed. 2d 775, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (stating that nationwide injunctions "appear to be inconsistent with longstanding limits on equitable relief and the power of Article III courts" and that they "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch"); *DHS v. New York*, 140 S. Ct. 599, 600-01 (2020) (Gorsuch, J., concurring) (similar).   These considerations are particularly compelling here, given that the Fifth Circuit is actively considering the related question of the constitutionality of the restriction on commercial sale of handguns to eighteen- to twenty-year-olds. *See Reese v. ATF*, No. 23-30033 (5th Cir. Jan. 13, 2023).

Moreover, with respect to GOA and GOF's membership, a TRO or preliminary injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."   FED. R. CIV. P. 65(d)(1)(B), (C).   As noted, Plaintiffs offer no evidence of whether or to what extent GOA and GOF maintain records of their memberships, much less do they provide any such records.   Thus, an injunction prohibiting NICS from conducting an enhanced background check on any eighteen- to twenty-year-old members of those organizations—without express reference to the identities of those members—would fail the requirements of Rule 65.

Finally, with respect to the temporal scope of any relief, Plaintiffs' request for a permanent injunction is premature.   As noted, *see supra* page 9, to obtain a permanent injunction, "the plaintiff must actually prevail on the merits," *Dung Quoc Pham*, 712 F. App'x at 365 (quoting *Dresser-Rand Co.*,

361 F.3d at 847). Thus, "[a] permanent injunction is generally only granted where . . . a full trial on

the merits has occurred," *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008), or on summary

judgment where "[t]here [i]s no genuine dispute of any material fact," *O'Connor v. Smith*, 427 F. App'x

359, 367-68 (5th Cir. 2011). Because this litigation has not yet reached that stage, the Court should

deny Plaintiffs' request for permanent injunctive relief. *See, e.g.*, *Alto-Shaam, Inc. v. Manitowoc Co.*, No.

7:09-CV-18-O, 2010 WL 11530847, at 1, *3 n.2 (N.D. Tex. Feb. 3, 2010) (denying motion for

permanent injunction filed prematurely).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a TRO, preliminary

injunction, and/or permanent injunction.

DATED: May 22, 2023                 Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/* Taisa M. Goodnature
TAISA M. GOODNATURE
New York Bar No. 5859137
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-3786
Fax: (202) 616-8470
Email:  Taisa.M.Goodnature@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On May 22, 2023, I filed the foregoing document with the Clerk of Court for the U.S. District Court for the Northern District of Texas, using the electronic case filing system of the Court. Accordingly, I hereby certify that I have served the document on all counsel of record, pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

*/s/ Taisa M. Goodnature*